# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| ROGERS LEE JACKSON, | * |
| Petitioner, | * |
| | CASE NO. 1:06-CV-46 WLS |
| vs. * | 28 U.S.C. § 2255 |
| | CASE NO. 1:03-CR-28 WLS |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

## REPORT AND RECOMMENDATION

Indictment was returned in this court on August 21, 2003, charging Petitioner Jackson with five Counts of Possession of Cocaine Base With Intent to Distribute in violation of 21 U.S.C. § 841. He was convicted by jury verdicts of all five Counts on January 16, 2004. His sentence of 235 months on each Count, running concurrently, was rendered on May 26, 2004, and administratively entered as Judgment on June 29, 2004. (R-51, 52) Jackson timely appealed his conviction and sentence and the same were affirmed by the Eleventh Circuit Court of Appeals on July 22, 2005. Petitioner Jackson then timely filed the present Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 (R-70). He alleged in his § 2255 Motion violations of his Fifth and Sixth Amendment jury trial rights pursuant to *Blakely v. Washington,* 542 U.S. 296 , 124 S.Ct. 2531 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), with a corollary claims of retroactive application of those decisions, and a claim of structural error in his sentence. Petitioner Jackson has also raised claims of ineffective assistance of counsel. Jackson alleged that his

Counsel was ineffective for failing to call witnesses that were present at trial to testify on his behalf that others besides himself had access to the house at 419 South Hampton Street, Americus, Georgia, and to a cell-phone kept primarily at that location. Secondly, Petitioner Jackson alleged that his Counsel failed to advise the court that two of his witnesses had been threatened by the Americus Police not to testify for Petitioner; that counsel failed to adequately investigate to find that Petitioner Jackson was not involved in the drug transactions that were attributed to his sentence.

New counsel was appointed to assist Petitioner and an evidentiary hearing was held on his factual claims on December 12, 2006. Subsequent to said hearing, the following legal and factual conclusions are made and submitted.

I.

**Petitioner Claims violations of his Fifth and Sixth Amendment jury trial rights pursuant to *Blakely v. Washington*, 542 U.S. 296 , 124 S.Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005),** stating, as **Ground One** of his Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 (R-70-1 at 5)**,** "because the facts underlying the calculation of his base offense level that enhanced his sentence was not found by a jury beyond a reasonable doubt nor did Petitioner admit to the drug quantity that enhanced his sentence."

Petitioner states a corollary claim in his **Ground Two**, that, "Petitioner submits that *United States v. Booker,* is retroactively applicable to him because it established a new rule

2

of Constitutional Law." He elaborates on this contention in his Memorandum (R-70-2 at 9) stating, "The Rule in *Booker* is Retroactive to Cases on Collateral Review." Thereafter, Petitioner paints this contentions with a very broad brush. However, it has long been settled that the *Booker* decision is not retroactive to cases on collateral review. "[A]s the Supreme Court concluded in *Schriro,* we conclude that *Booker's* constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States,* 400 F.3d 864, 868 (11th Cir. 2005), *cert. denied,* 126 S.Ct. 312 (2005).

The chronology of Petitioner Jackson's conviction, sentence, and direct appeal are important in determining the application to his case of the Supreme Court decisions in *Blakely v. Washington,* 542 U.S. 296 , 124 S.Ct. 2531, decided June 24, 2004, and *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, decided January 12, 2005. Jackson's sentence was determined in two phases by the District Court. The court conducted an initial evidentiary hearing and findings on the scope of Jackson's relevant conduct on March 25, 2004, and on May 26, 2004, made the ultimate determination as to the drug quantity attributable to Jackson, determined his guideline sentence range to be 188 to 235 months, and then sentenced Petitioner to 235 months imprisonment on each count of conviction to run concurrently. (Sentencing Transcripts 3/25/04 and 5/ 26/04) The sentence was not administratively filed as the Judgment in the case until June 29, 2004. (R-52). It must be noted that the oral sentence controls any conflicts appearing in the written judgment, and the district court is legally obliged to make the written judgment conform to the oral sentence.

3

*See United States v. Portillo,* 363 F.3d 1161, 1164-65 (11th Cir. 2004).

Between the date of oral sentencing and the administrative filing of the written Judgment, the United States Supreme Court issued its decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, which according to the *Portillo* ruling, cited above, had no impact on Jackson's sentence at that time.

However, in *Booker,* 125 S.Ct. at 769, decided on January 12, 2005, while Jackson's appeal was still pending before the Court of Appeals for the Eleventh Circuit, the Supreme Court held:

> [W]e must apply the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review. See *Griffin v. Kentucky,* 479 U.S. 314, 328 (1987) ([A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final.)

The United States Court of Appeals for the Eleventh Circuit noted in *Varela* that, "[T]he Supreme Court further explained that the holding in *Blakely* applies to the Federal Sentencing Guidelines. *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005). To the extent Varela's appeal turns on the application of *Blakely,* it also turns on the application of *Booker." Varela v. United States,* 400 F.3d 864, 865, FN 1 (11th Cir. 2005). So it is with Petitioner Jackson's appeal. While, understandably, neither counsel nor the sentencing court, at the sentencing hearing on May 26, 2004, could anticipate or apply the *Blakely* or *Booker* rulings, because, at that time, those rulings had not been issued, the United States Court of Appeals for the Eleventh Circuit did apply them to Petitioner Jackson's direct appeal on his

4

Fifth and Sixth Amendment violation claims. In its decision rendered June 10, 2005 (R-68), the United States Court of Appeals for the Eleventh Circuit, citing *United States v. Rodriguez,* 398 F.3d 1291 (11th Cir. 2005), *cert. denied,* 125 S.Ct. 2935(2005), the Court "acknowledging that a *Booker* error was plain, but holding that, in order to show that his substantial rights were affected under plain error review, the appellant must show that his sentence would have been different but for the court's use of the mandatory guidelines." The Court held that, "There is no evidence in the record to show that Jackson's sentence would have been different but for the mandatory guidelines." The fact that the sentencing judge elected to sentence Jackson at the high end of the guideline range does not indicate that he would have issued a lesser or difference sentence had he foreseen *advisory* guidelines.

The Eleventh Circuit Court of Appeals held in *United States v. Nyhuis,* 211 F.3d 1340, 1343(11th Cir. 2000):

> The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. *United States v. Rowa,* 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997).

As his **Ground Three,** Jackson submits that the sentencing error in view of the *Apprendi, Blakely,* and *Booker* decisions was structural and could never be found to be harmless error. The United States Supreme Court addressed the question whether *Blakely* error could be deemed harmless error and not structural error in *Washington v. Recuenco,* 126 S.Ct. 2546, 2553 (2006), finding that, failure to submit a sentencing factor (such as

5

guideline relevant conduct assessments, as in Jackson's case) to the jury, like failure to submit an element of the offense charged, is not structural error that would always invalidate a conviction.

Upon all of the foregoing authority, Petitioner's **Grounds One, Two,** and **Three** claims should be denied.

In his Memorandum, Petitioner Jackson proffers his contention that 21 U.S.C. § 841(b)(1)(A) & (B) are unconstitutional in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000), and its progeny *Blakely and Booker.* The United States Court of Appeals for the Eleventh Circuit has held emphatically to the contrary. In *United States v. Underwood,* No.04-15750 (11th Cir. April 25, 2006), the Court held:

> In *United States v. Sanchez,* 269 F.3d 1250 (11th Cir. 2001) (en banc) we held that *Apprendi* only implicated § 841 where a judge-found drug quantity increased a defendant's sentence beyond the statutory maximum. *Sanchez,* 269 F.3d at 1268. In cases where a "defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction" there is no *Apprendi* constitutional error. *Id.* Following the reasoning set forth in *Sanchez,* we later held that where a defendant "cannot demonstrate that no set of circumstances exist under which the [statute] would be valid," a statute is not unconstitutional. *United States v. Tinoco,* 304 F.3d 1088, 1101 (11th Cir. 2002) (holding that . . . because in most sentencing scenarios "the sentence actually imposed will fall below the prescribed statutory maximum."). Under our precedent, therefore, an *Apprendi* constitutional error occurs *only* where a defendant is sentenced beyond the statutory maximum for the offense. *Sanchez,* 269 F.3d at 1268-69; *Tinoco,* 304 F.3d at 1101.

Each of the five (5) Counts of Jackson's Indictment (R-1) charged Possession With Intent To Distribute More Than 5 Grams of "Crack" Cocaine, in violation of 21 U.S.C. §

841(a)(1) and § 841(b)(1)(B)(iii). Subsection 841(b), the penalty provision of § 841 provides at (1)(B)(iii) that:

> In the case of a violation of subsection (a) of this section involving —
> (iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
> such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years.

Petitioner Jackson's sentences were pronounced within the statutory maximum and are, therefore, constitutional. There is no merit in his contention that 21 U.S.C. § 841(a)(1)(A) and (B) are unconstitutional. *See also United States v. Rodriguez,* 398 F.3d 1291 (11th Cir. 2005), *cert. denied,* 125 S.Ct. 2935(2005).

## II.

### Petitioner's Ineffective Assistance of Counsel Claims

The district court may properly address ineffective assistance of counsel claims in a § 2255 Motion under the two-part analysis of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). To prevail on an ineffective assistance of counsel claim, a § 2255 petitioner would have to show that his trial attorney's performance fell below an objective standard of reasonableness and that these unprofessional errors prejudiced the defense. *Id.* To show prejudice, the § 2255 petitioner must "show that there is a reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

7

Jackson's claim that his trial attorney failed to adequately investigate is too general to be a meaningful claim, nor is it legally sustainable. The Supreme Court has told us that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. *See Mills v. Singletary,* 63 F.3d 999, 1024 (11th Cir. 1995) ("The question is whether . . . ending an investigation short of exhaustion, was a reasonable tactical decision. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end."). In *Rogers v. Zant,* 13 F.3d at 387, we rejected the position that strategic decisions can be considered reasonable only if they are preceded by a "thorough investigation." Instead, we explained that the "correct approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless, energy or financial resources." *Id.* We have also put it in other words, saying that to be effective a lawyer is not required to "pursue every path until it bears fruit or until all hope withers." *Foster v. Dugger,* 823 F.2d 402, 405 (11th Cir. 1987) (quoting *Solomon v. Kemp,* 735 F.2d 395, 402 (11th Cir. 1984)).

Jackson's claim of ineffective assistance of counsel, for failure to properly investigate his case, is found to be without merit.

Jackson's claim that his trial counsel was ineffective for failing to call witnesses that were present at trial to testify on his behalf that others besides himself had access to the house at 419 South Hampton Street, Americus, Georgia, and to a cell-phone kept primarily at that location, was fully addressed at the evidentiary hearing on his § 2255 Motion. On

8

direct examination, Jackson's trial counsel testified that he had conferred with Jackson at the close of the Government's case and that it was Mr. Jackson's decision not to call these witnesses, that there was some concern about these potential witnesses. (Hearing Transcript page 10). On cross examination, the Government's attorney developed that the "witnesses waiting outside the courtroom to testify" were (1) Jackson's mother Eva McFarland (who was not actually subpoenaed as a witness) who had furnished the residence at 419 South Hampton where her son lived and where she had furnished the cell-telephone kept at that residence and used apparently indiscriminately by her son and any number of other persons unknown to Mrs. McFarland, and that she had pending charges of possession of marijuana against her at the time of the trial. (Transcript at 67- 68, 88); (2) Victoria Burrell who was a former girlfriend of the Petitioner by whom he had had a child (Transcript at 80); (3) David Ladimarault, the Petitioner's brother who also lived with him at the residence at 419 South Hampton Street, Americus, Georgia (Transcript at 81, 83); (4) Herman Stephens, a friend of Petitioner Jackson's who apparently left the the trial and did not return after the second or third day (Transcript at 75 ,76); and (5) Shondamika Thomas, Petitioner's girlfriend at the time of trial (Transcript at 79, 88). Petitioner's attorney expressed concerns that illegal activities were going on in the house at 419 South Hampton Street and that he had concerns about what might happen on cross examination of witnesses who had regular access to that house. (Transcript at 57). As to the Petitioner himself advising the Court that he did not choose to testify, his trial lawyer's not putting him up seems to be justified fully by his answers at his § 2255 hearing when he told the Government's attorney that he had told his

9

trial attorney that he was a drug dealer and had sold drugs in Americus, Georgia, in the year of his charged offenses (Transcript at 112-113). Petitioner has failed to demonstrate that his trial counsel acted differently from any other reasonable attorney in not calling Petitioner's witnesses to testify or in putting the Petitioner himself on the stand, nor has Petitioner demonstrated how the outcome of his trial would have been different had counsel acted otherwise.

As to threats being made against two of Petitioner's witnesses, the evidence at the evidentiary hearing on his motion revealed only that witness Stephens told Ms. McFarland that the Americus Police Department had told him that he would be arrested if he went back to Albany to testify for Petitioner. While Ms. McFarland stated that she related this to Petitioner's trial counsel, trial counsel testified that he had no recollection of ever having been told anything about threats to a witness and if he had he would have taken the matter up with the trial judge. (Transcript at 42).

Petitioner has failed to meet either prong of the *Strickland* test of ineffective assistance of counsel. He has not shown that no reasonable counsel would have acted as Petitioner's trial counsel did, and he has failed to demonstrate that the outcome of his trial would have been different had counsel acted differently than he did.

Finally, Jackson alleged ineffective assistance of counsel for counsel's failure to raise *Blakely/ Booker* violations of his Fifth and Sixth Amendment jury trial rights at his sentencing hearing. Petitioner's sentencing hearing was held on March 25, 2004, to establish the amount of cocaine involved in Petitioner's case (R-48), and the remainder of

the sentencing hearing was held on May 26, 2004 (R-51). *Blakely v. Washington,* 542 U.S. 296 , 124 S.Ct. 2531 (2004), was not decided until June 24, 2004, and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 was not decided until January 12, 2005.

The United States Court of Appeals for the Eleventh Circuit established in *Tarver v. Hopper,* 169 F.3d 710, 714 (11th Cir. 1999), that, while a defendant may complain that his lawyer is unimaginative in failing to raise issues provided by yet undecided Supreme Court cases, such "a lack of creativity does not constitute ineffective assistance." Moreover, at the time of Petitioner Jackson's sentencing, the United States Court of Appeals for the Eleventh Circuit had also determined that the principles decided in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000), did not apply to federal sentencing guidelines. *See United States v. Reese,* 382 F.3d 1308, 1312 (11th Cir. 2004) (the district courts of this circuit should adhere to pre-*Blakely* precedent and continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue). The Court noted that *Booker/Fanfan* had already been scheduled for oral argument in the Supreme Court at that time.

Again, Petitioner Jackson has failed to show that he has been prejudiced by the sentencing procedure as affirmed by the United States Court of Appeals for the Eleventh Circuit on his direct appeal, nor by the conduct of his counsel at the time of his sentencing. As noted, Petitioner Jackson's post-*Booker* advisory guidelines would still have to be considered by the trial court, and the range would still be 188 to 235 months. Inasmuch as the trial court took no issue with sentencing the maximum guideline range in 2004, nothing has been shown nor made to appear that the trial court would sentence any differently under

advisory guidelines now. There is no merit in any of Petitioner Jackson's claims.

Additionally, Jackson's counsel "requests additional time to fine (sic) any amendments upon sending a copy of these objections to him (Jackson) for input and response," is denied. A counseled petitioner may not act as co-counsel without court approval and order; *pro se* amendments to Petitioner's Objections will not be received.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Jackson's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 11th day of June 2007.

                                                 S/ G. MALLON FAIRCLOTH
                                                 UNITED STATES MAGISTRATE JUDGE